Eastern District of Kentucky
FILED
JAN - 8 2018
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

Civil Action No. 17-39-HRW

GREGORY ALLEN NAPIER,                          PLAINTIFF,

v.           **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits in November 2010, alleging disability due to "heart attack, back problems, high blood pressure [and] high cholesterol." (Tr. 459). This application was denied initially, on reconsideration and by administrative decision. The Appeals Council granted Plaintiff's request for review and entered an order remanding this matter. Specifically, in its remand order, the Appeals Council found error because the ALJ did not discuss or weigh the opinions of Dr. Pettus, Dr. Hernandez, Dr. Swan, and Edward Stodola, Ph.D. (Tr. 240). The Appeals Council also found error because the ALJ found Plaintiff limited in certain areas (vibrations, bending, twisting, and standing and walking), but did not specify how limited (Tr. 239). As a result, it ordered the ALJ to reassess Plaintiff's residual

functional capacity, weighing the medical opinions, and to obtain supplemental vocational expert evidence (Tr. 240).

The matter was assigned to Administrative Law Judge Don C. Paris ("ALJ"), who convened a hearing, at which both Plaintiff and Martha Gross, a vocational expert ("VE") testified. At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

> Step 1: If the claimant is performing substantial gainful work, he is not disabled.
>
> Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).
>
> Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.
>
> Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.
>
> Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled. Plaintiff has a 12th grade education (Tr. 460). His past relevant work experience consists of work as a floral designer (Tr. 460).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 57).

The ALJ then determined, at Step 2, that Plaintiff suffers from status post Myocardial

infarction and degenerative disc disease, which he found to be "severe" within the meaning of the Regulations (Tr. 57).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 58).

The ALJ further found that Plaintiff could not return to his past relevant work (Tr. 60) but determined that he has the residual functional capacity ("RFC") to perform a range of light work with the following restrictions: he could lift and carry 20 pounds occasionally and 10 pounds frequently; he could sit six hours and stand or walk six hours per day; he could occasionally climb ladders; he could frequently stoop, kneel, and crouch; and he should avoid concentrated exposure to heat, cold, and vibration. (Tr. 60).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 61).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A.   Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by

substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997).

### B. Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ did not properly weigh the medical opinions in the record and (2) the ALJ did not comply with the Appeals Council's remand order.

### C. Analysis of Contentions on Appeal

Plaintiff's first claim of error is that the ALJ did not properly weigh the medical opinions in the record. Specifically, Plaintiff maintains that the ALJ did not adequately consider the opinions of his primary care physician, Steven Green , M.D., his treating cardiologist, Gary

4

Grigsby, M.D. and consultative examiner, Naushad Haziq, M.D.

"In order to determine whether the ALJ acted properly in disagreeing with a medical source, we must first determine the medical source's classification," *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010), as "not all medical sources need be treated equally," *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007). The Social Security regulations classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Id.* at 875. Generally, more weight is given to the medical "opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1); *see also Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir.2012) (noting that a nonexamining source's opinion is given less deference than an examining (but not treating) source's opinion, which is given less deference than a treating source). But "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. One such instance is where the "[s]tate agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3). Generally, more weight is given to opinions that are "more consistent ... with the record as a whole," *id.* § 404.1527(c)(4), and opinions of "a specialist about medical issues related to his or

5

her area of specialty." *Id.* § 404.1527(c)(5).

An ALJ may discount a physician's opinion, treating or otherwise, when the physician does not provide objective medical evidence to support his or her opinion or if the doctor's opinion is inconsistent with the record as a whole. 20 C.F.R. § 416.927( c). In addition, although a physician's opinion about what a claimant can still do or the claimant's restrictions may be relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. 20 C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946( c).

Plaintiff first saw Dr. Green in May 2012 and continued seeing him every few months until September 2015. A review of Dr. Green's treatment notes reveals that although Plaintiff's back was usually tender, he had full strength in his extremities. (Tr. 715, 784, 920, 924, 928, 950). On two occasions, however, in October 2012 ans April 2013, Dr. Green noted slightly reduced strength in Plaintiff's right hip (Tr. 778 and 788).

In July 2012, during Plaintiff's second visit with Dr. Green, the doctor completed a medical source statement opining that Plaintiff could sit two hours per day, stand two hours per day, walk one to two hours per day, and lift no more than 10 pounds (Tr. 712- 716). However, there are no references to diagnostic testing in the assessment or a clear explanation as to how the opinion was reached. In March 2014, Dr. Green stated that he agreed with his July 2012 opinion, but again provided no explanation (Tr. 882).

The ALJ considered Dr. Green's opinion and found it to be at odds with Plaintiff's improved cardiac condition and pain management with regard to his back. (Tr. 60). The fact that Dr. Green's opinion of extreme physical limitation is inconsistent with not only his own

6

treatment notes but with the other medical evidence in the record are appropriate reasons for giving it little weight. The Court finds no error in this regard.

In September 2011, Plaintiff saw cardiologist, Gary Grigsby, M.D. Dr. Grigsby noted that Plaintiff had "minimal or mild" shortness of breath (dyspnea), but was regularly walking (Tr. 728). He told Plaintiff to stop using the previously prescribed anti-coagulant (Tr. 728). Later the same month, Plaintiff complained of chest pain, but he was not having a heart attack (Tr. 836). As a result, he underwent another cardiac catheterization, which showed additional narrowing and he had another stent implanted (Tr. 838). He continued to see Dr. Grigsby, who reported that Plaintiff's coronary artery disease was stable. He had mild shortness of breath but otherwise no cardiac symptoms (Tr. 710-11, 736-37). In August 2012, Plaintiff was again taken off Effient (Tr. 737).

A few months later, in October 2012, Plaintiff went to the hospital with chest pain for the first time in a year (Tr. 824). Blood tests showed that he had experienced a "very small" heart attack; he had another cardiac catheterization and another stent implanted (Tr. 824-25). For almost two years afterwards, he had no cardiac symptoms (Tr. 791 ("Doing well"; heart disease "[c]linically asymptomatic"), 815 (heart disease "[c]linically asymptomatic"), 821 ("no cardiac complaints")).

Then in August 2014, Plaintiff reported some episodes of sweating (diaphoresis) and nausea, but no chest pain, heart palpitations, or shortness of breath (Tr. 915).

It was not until August 2015 that Plaintiff reported any additional cardiac symptoms, when he reported chest pain and shortness of breath (Tr. 911). He was not taking nitroglycerin because he did not have any and, as a result, Dr. Grigsby prescribed it to him (Tr. 911, 913). He

was also sent for testing, including a stress test—which was stopped because of musculoskeletal fatigue but showed fair exertional capacity (Tr. 955-56)—and a diagnostic cardiac catheterization—which showed 50% narrowing in one of his neck arteries (*see* Tr. 948). He was started on Imdur (used to treat chest pain), after which he did fairly well, although he reported throbbing pain at bedtime (Tr. 960).

In August 2012, Dr. Grigsby completed a medical source statement, opining that Plaintiff could sit, stand, or walk 30 minutes at a time and two hours per day and lift no more than 20 pounds (Tr. 727). Dr. Grigsby wrote letters in April 2013 and October 2015, stating that he agreed with his August 2012 opinion, but provided no explanation or supporting documentation (Tr. 755, 966).

The ALJ discounted Dr. Grigsby's opinion, finding that it lacked explanation and supporting data. Notably, that very day Dr. Grigsby rendered his first opinion, Plaintiff told him he had no cardiac symptoms other than mild shortness of breath on exertion (Tr. 831). Moreover, the record establishes that Plaintiff's cardiac condition improved after stenting, which belies Dr. Grigsby's repeated statement that Plaintiff had extreme limitation in sitting, standing and walking. These are proper reasons for giving little weight to an opinion from a treating source and the Court finds no error in this regard.

In July 2013, Naushad Haziq, M.D., examined Plaintiff as part of his disability application (Tr. 795). Dr. Haziq noted that Plaintiff was mildly obese and had a slow, cautious gait, but could stand from a seated position and appeared comfortable sitting and lying down (Tr. 797). Plaintiff's neck, arms, hands, knees, ankles, and feet and were all normal and he had full strength; however, his low back was tender with reduced range of motion (Tr. 798-99). Dr.

8

Haziq opined that Plaintiff could frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds; sit 30 minutes at a time and three hours per day; and stand or walk 15 minutes at a time and two hours each per day (Tr. 803-04). In support of his opinion, he cited Plaintiff's back pain with reduced range of motion and heart problems that were "now asymptomatic" (Tr. 803). The ALJ considered this opinion and gave it little weight because it was inconsistent with Plaintiff's examination findings showing only mildly to moderately reduced lumbar range of motion, normal neurological examinations, and improvement with treatment (Tr. 60). Again, given the lack of supporting data, the Court finds no error in this regard.

Plaintiff's second claim of error is that the ALJ did not comply with the remand order. This argument lacks merit. As set forth *supra*, the Appeals Council found error because the ALJ found Plaintiff limited in certain areas (vibrations, bending, twisting, and standing and walking), but did not specify how limited (Tr. 239). As a result, it ordered the ALJ to reassess Plaintiff's residual functional capacity, weighing the medical opinions, and to obtain supplemental vocational expert evidence (Tr. 240).

The hearing decision makes clear that the ALJ did just that. He discounted Dr. Pettus's opinion and gave greater weight to the findings of Dr, Swan and Dr. Hernandez. He made specific findings as to how long Plaintiff could sit, stand, walk, kneel, stoop and crouch and found that Plaintiff needed to avoid concentrated exposure to certain environmental conditions (Tr. 58). The ALJ also obtained testimony from a vocational expert (Tr. 95). Thus, the ALJ's decision comports with the Appeals Council's remand order.

Contrary to what Plaintiff appears to argue, the mere fact that this ALJ reached the same conclusion as the previous ALJ does not establish that this ALJ did not evaluate the doctors'

9

opinions. A review of the hearing decision and the record shows that the ALJ compiled with the remand order. To the extent that Plaintiff suggests that this evidence is open to another interpretation that favors his claim, the Court declines to reweigh the evidence in this fashion. If the decision denying benefits is supported by substantial evidence, as it is here, the Court must affirm that decision. *Longworth v. Commissioner of Social Security*, 402 F.3d 591, 595 (6th Cir. 2005).

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This ___ day of January, 2018.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge